**E-FILED**
Friday, 13 October, 2006  09:57:07 AM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| IOWA MUTUAL INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No.  05-3073 |
| LARRY HENNINGS, et al., | ) ) ) | |
| Defendants. | ) | |

## OPINION

JEANNE E. SCOTT, U.S. District Judge:

This matter comes before the Court on Plaintiff Iowa Mutual Insurance Company's (Iowa Mutual) Motion for Summary Judgment Pursuant to Rule 56 of the Federal Rules of Civil Procedure and CDIL-LR 7.1(D) (d/e 48) (Motion).  Iowa Mutual filed this three-count declaratory judgment action to determine its duty to defend and cover claims against Defendant Larry Hennings under three separate insurance policies. Defendants John Wells and Joy Wells, husband and wife, filed an action in state court against Defendants Hennings and John R. Brix, DVM, d/b/a Brix Veterinary Services (Brix), for injuries John Wells suffered while working for

1

Defendant Hennings Feed and Crop Care, Inc. (Crop Care). <u>Wells v. Brix, et al.</u>, Shelby County, Illinois, Circuit Court Case No. 2005 L 10 (Underlying Action). Hennings is the owner, and an officer and director of, Crop Care.

Iowa Mutual issued two general liability policies to Crop Care, and a farming liability policy to Hennings personally. Iowa Mutual began providing a defense to the Underlying Action under a reservation of rights. Iowa Mutual then filed this action. The Court previously entered default judgments against Defendants Hennings and Crop Care. <u>Opinion and Judgment entered February 16, 2006 (d/e 45 & 46)</u>. Iowa Mutual now moves for summary judgment as to the other Defendants. Iowa Mutual asks the Court to declare that it has no duty to defend the Underlying Action under these three policies. John and Joy Wells, and Brix oppose the Motion.

For the reasons set forth below, the Motion is ALLOWED in part and DENIED in part. Iowa Mutual is also entitled to summary judgment against Defendants John and Joy Wells on Count I because they made a binding judicial admission that John Wells was an employee of Crop Care, and the relevant policy excluded coverage of injuries to employees. Iowa

Mutual is entitled to summary judgment on Count II as to all Defendants because the injuries alleged in the Underlying Action did not occur during the coverage period of the relevant policy. The remainder of the Motion is DENIED.

JURISDICTION

Initially, John and Joy Wells question this Court's subject matter jurisdiction. Subject matter jurisdiction can be raised at any time, and the Court should resolve the jurisdictional issue before addressing the Motion. Iowa Mutual filed this case as a diversity action. Iowa Mutual is an Iowa corporation with its principal place of business in Iowa, and the Defendants are all citizens of Illinois. First Amended Complaint for Declaratory Judgment (d/e 15) (Amended Complaint), ¶¶ 2-8. John and Joy Wells question this Court's jurisdiction because the excerpts of the policies attached to the Amended Complaint indicate that an entity called Iowa Mutual Group issued the policies. See Defendant John and Joy Wells' Response and Objection to Plaintiff Iowa Mutual Insurance Company's Motion for Summary Judgment (d/e 79) at 1-4, and attached Exhibits. John and Joy Wells question whether Iowa Mutual Group is the real party in interest, and if so, whether this Court has diversity jurisdiction. See Betar

v. De Havilland Aircraft of Canada, Ltd., 603 F.2d 30, 32 (7th Cir. 1979) (diversity jurisdiction is determined by the citizenship of the real party in interest).

Iowa Mutual has the burden to establish jurisdiction.  Meridian Sec. Ins. Co. v. Sadowski, 441 F.3d 536, 540 (7th Cir. 2006).  Iowa Mutual has submitted the Affidavit of its Executive Vice President Tom Cole.  Plaintiff Iowa Mutual Insurance Company's Reply to Defendant John and Joy Wells' Response and Objection to Plaintiff Iowa Mutual Insurance Company's Motion for Summary Judgment Pursuant to Rule 56 of the Federal Rules of Civil Procedure and CDIL-LR 7.1(D) (d/e 81), Exhibit A, Affidavit of Tom Cole.  According to Cole, Iowa Mutual Group is an unincorporated association of Iowa Mutual, three other Iowa corporations and an Iowa limited liability company.  Affidavit of Tom Cole, ¶ 5.  Cole's Affidavit also establishes that Iowa Mutual issued the policies at issue and will pay any sums due under the policies.  Affidavit of Tom Cole, ¶¶7-9.  This evidence establishes that Iowa Mutual is the real party in interest, not Iowa Mutual Group.  This evidence meets Iowa Mutual's burden to establish jurisdiction. See Meridian Sec. Ins. Co., 441 F.3d at 540 (requiring proof by a preponderance of the evidence).  Iowa Mutual, thus, is the proper Plaintiff,

not Iowa Mutual Group, and the Court has diversity jurisdiction.[1]

## STATEMENT OF FACTS

A.   THE POLICIES

In December 1994, Iowa Mutual issued Commercial General Liability Policy No. CC64734GL to Crop Care (1994 Policy).  The 1994 Policy was renewed annually through January 1, 2000.  The 1994 Policy states:

1.   Insuring Agreement

    a.   We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. . . .

    b.   This insurance applies to "bodily injury" and "property damage" only if:

---

[1]The Court notes that if Iowa Mutual Group were the real party in interest, then the evidence presented would not have established diversity jurisdiction.  Iowa Mutual Group would be a citizen of each state of which a member of the association is a citizen.  Meyerson v. Harrah's East Chicago Casino, 299 F.3d 616, 617 (7th Cir. 2002).  The evidence shows that the corporations and the limited liability company are all organized in Iowa and have their principal places of business in Iowa.  The citizenship of the limited liability company, however, is determined by the citizenship of its members, not its place of organization, or its principal place of business.  Belleville Catering Co. v. Champaign Market Place, L.L.C., 350 F.3d 691, 692 (7th Cir. 2003).  The evidence presented did not establish the citizenship of the members of the limited liability company, and so, did not establish the citizenship of Iowa Mutual Group for diversity purposes.

(1)  The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

(2)  The "bodily injury" or "property damage" occurs during the policy period.

c.  Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

Motion, Exhibit 2, 1994 Policy Excerpts (d/e 52-53), § I, ¶ 1.[2]  The coverage territory included all of the United States.  Id., § V, ¶ 4.a.  The initial policy period began on January 1, 1995, for one year.  The coverage period was renewed annually until January 1, 2000.

The 1994 Policy also had the following relevant exclusions:

2.  Exclusions

This insurance does not apply to:

a.  Expected or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. . . .
. . . .

e.  Employer's Liability

---

[2]All of the policies at issue refer to Iowa Mutual by first-person plural pronouns ("we", "our", and "us"), and to insured by second person pronouns ("you" and "your").

6

"Bodily injury" to:

(1)   An "employee" of the insured arising out of and in the course of:

  (a)   Employment by the insured; or

  (b)   Performing duties related to the conduct of the insured's business; or

(2)   The spouse, child, parent, brother or sister of that "employee" as a consequence of paragraph (1) above.

This exclusion applies:

(1)   Whether the insured may be liable as an employer or in any other capacity; and

(2)   To any obligation to share damages with or repay someone else who must pay damages because of the injury.

. . . .

Id., § I, ¶¶ 2.a & 2.e.  The 1994 Policy defined "employee":

"Employee" includes a "leased worker".  "Employee" does not include a "temporary worker".

Id., § V, ¶ 5.  The 1994 Policy stated that the term "insured" included Crop Care's officers and directors.  Id., § II, ¶ 1(d).

The 1994 Policy defined "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these

7

at any time." <u>Id.</u>, § V, ¶ 3.  "Property damage" was defined as "physical injury to tangible property" or "loss of use of tangible property." <u>Id.</u>, § V, ¶ 15.

In January 1995, Iowa Mutual issued a Farm Liability Policy No. 9798448FL (Farm Policy) to Hennings personally.  The Farm Policy was renewed on an annual basis until May 2001.  The comparable coverage terms, exclusions and definitions in the Farm Policy were identical in all material respects to the terms of the 1994 Policy quoted above.  <u>Motion</u>, Exhibit 3, <u>Farm Policy Excerpts (d/e 54-58)</u>.  The Farm Policy, however, contained additional relevant terms, including an exclusion for Business Pursuits:

> 2.  Exclusions
>
> This insurance does not apply to:
>
> . . . .
>
> i.  Business Pursuits
>
> "Bodily Injury" or "property damage" arising out of or in connection with a "business" engaged in by an "insured". . . .

<u>Farm Policy Excerpts</u>, § I, ¶ 2.i.  The Farm Policy defined "business":

> "Business" means a trade, profession, occupation, enterprise or activity, other than "farming" or "custom farming", which is

8

engaged in for the purpose of monetary or other compensation.

Id., § IV, ¶ 3.

The Farm Policy defined "farming":

6.    "Farming" means the operation of an agricultural or aquacultural enterprise, and includes the operation of roadside stands, on your farm premises, maintained solely for the sale of farm products produced principally by you. Unless specifically indicated in the Declarations, "farming" does not include:

    a.    Retail activity other than that described above; or

    b.    Mechanized processing operations.

Id., § IV, ¶ 6.  The term "insured" in the Farm Policy included Hennings and members of his household.  Id., § IV, ¶ 8.a.

In January 2000, Iowa Mutual issued Crop Care a new Commercial General Liability Policy No. CC75895GL (2000 Policy).  The coverage was issued for the period from January 1, 2000, to January 1, 2001.

B.    THE UNDERLYING ACTION

On February 27, 2003, John and Joy Wells filed the Underlying Action in state court against Brix and Hennings.  In the First Amended Complaint in the Underlying Action (Underlying Amended Complaint), John and Joy Wells alleged that John Wells was in the employ of Hennings

9

between October 1996 and March 1997.  <u>Motion</u>, Exhibit 5, <u>Underlying Amended Complaint (d/e 62-64)</u>, ¶ 5.  John and Joy Wells had alleged in the original Complaint that, at all relevant times, John Wells was an employee of Crop Care.  <u>Motion</u>, Exhibit 4, <u>Underling Complaint (d/e 59-61)</u>, ¶ 3.  John and Joy Wells alleged in both complaints that during this time period John Wells contracted "a nearly fatal salmonella infection" from diseased hogs owned by Hennings.  <u>Underlying Amended Complaint</u>, ¶ 5. They alleged:

> That plaintiff's contraction of said disease necessitated his hospitalization during which time his treating physician desperately sought to ascertain the specific strain of salmonella to which plaintiff was exposed.  Plaintiff, Joy Wells, contacted defendant Hennings and his representatives, agents and/or employees on numerous occasions to ascertain such information to no avail.  Plaintiff was assured such information would be supplied but it was never forthcoming.  Plaintiff's medical treatment was delayed and further damages owing thereto resulted.

<u>Underlying Amended Complaint</u>, ¶ 9.

John and Joy Wells further alleged that Brix was Hennings' veterinarian and had tissue samples from the diseased hogs.  They alleged that Hennings asked Brix to destroy the samples, and he did so.  <u>Underlying Amended Complaint</u>, ¶ 12.

John Wells brought seven counts against Brix under various theories of negligent, reckless and intentional conduct.  <u>Underlying Amended Complaint</u>, Counts I-VII.  Joy Wells brought seven companion counts for loss of consortium based on the same theories.  <u>Id.</u>, Counts VIII-XIV.  John Wells brought four counts against Hennings entitled: Negligent Spoilation of Evidence (Count XV); Intentional Infliction of Emotional Distress (Count XVI); Civil Conspiracy (Count XVII); and Fraud (Count XVIII).  The claims against Hennings all relate to the destruction of the hog tissue samples and the resulting injuries to John Wells.  Joy Wells brought four companion counts for loss of consortium based on the same theories.  John Wells did not bring an action against Hennings for the actual contraction of the disease.  That was brought as a workers compensation claim.  <u>Underlying Amended Complaint</u>, ¶ 10.

Count XV, and Companion Count XIX, are the only counts against Hennings that any party contends were based on unintentional conduct.  The relevant portions of Count XV alleged:

56.     That the defendant was aware Dr. Brix was in actual possession of tissue samples obtained from the hogs of Larry Hennings.  Defendant Larry Hennings was opposed to the testing of the tissue samples and, in fact, repeatedly attempted to contact Dr. Brix for the purpose of requesting the destruction of or avoidance of laboratory testing of said tissue samples.  Defendant made such requests to avoid financial loss and in conscious disregard of the risks plaintiffs, others similarly situated and the community in general would be exposed to by said actions. Defendant was aware plaintiff had contracted a strain of salmonella and the tissue samples were needed to assist in prompt medical treatment for this life threatening disease.

57.     That defendant knew or should have known such samples could be used for medical treatment and/or for potential litigation as plaintiff was injured while in his employ, yet despite such knowledge requested or ordered the destruction of the samples nonetheless.

. . . .

60.     That as a direct and proximate result of the aforesaid the plaintiff has been diminished in his right to recovery and has incurred multiple expenses otherwise unnecessary in his quest to exercise statutory rights available to him to recover through the workers compensation forum. Additionally, plaintiff has sustained a diminished likelihood of recovery.  Further, plaintiff's medical treatment was delayed resulting in unnecessary additional pain, suffering, disability, disfigurement, medical bills and lost income.

Underlying Amended Complaint, ¶¶ 56, 57, 60.  These paragraphs were incorporated by reference into Count XIX.  Id., ¶¶ 71-74.

The parties have also presented uncontradicted evidence that the hogs, in fact, were owned by Crop Care, and that John Wells was working for Crop Care when he was exposed to the hogs.  John Wells worked for Crop Care at its facility in Shelbyville, Illinois.  Crop Care ran a seed, fertilizer, and agricultural chemical sales business from the Shelbyville facility.  In the mid-1990's, John Wells owned a hog finishing facility in Lakewood, Illinois (Lakewood Facility).  During this time period, Crop Care purchased feeder hogs and placed those hogs at the Lakewood Facility.  The hogs were then fattened for market at that facility.  <u>Motion</u>, Exhibit 7, <u>Deposition of Larry Hennings</u> at 15.

Larry Hennings testified in his deposition that Crop Care considered John Wells to be an independent contractor.  Crop Care paid John Wells by the hour for work done at the Shelbyville facility, but did not pay him by the hour for work done at the Lakewood Facility.  Rather, Crop Care paid him a flat fee per hog sent to market.  Crop Care reported all moneys paid to John Wells on an IRS Form 1099 and did not withhold any funds from his compensation.  <u>Deposition of Larry Hennings</u> at 12-15.

The defense of the Underlying Action was tendered to Iowa Mutual.  Iowa Mutual has defended the Underlying Action under a reservation of

rights and has filed this action to determine its duty to defend and to cover liabilities that may arise from the action.  Iowa Mutual secured default judgments against Hennings and Crop Care.  Iowa Mutual now seeks summary judgment against Brix and John and Joy Wells.

<u>ANALYSIS</u>

At summary judgment, Iowa Mutual must present evidence that demonstrates the absence of a genuine issue of material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323-24 (1986).  The Court must consider the evidence presented in the light most favorable to the Defendants.  Any doubt as to the existence of a genuine issue for trial must be resolved against Iowa Mutual.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986).  Once Iowa Mutual has met its burden, the Defendants must present evidence to show that issues of fact remain with respect to an issue essential to their case, and on which they will bear the burden of proof at trial.  <u>Celotex Corp.</u>, 477 U.S. at 322; <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).

The duty to defend is broader than the duty to indemnify for liability.  Generally, the duty to indemnify for liability cannot be determined until after the verdict in the underlying action.  <u>E.g.</u>, <u>Crum and Forster Managers</u>

v. Resolution Trust Corp., 156 Ill.2d 384, 387, 620 N.E.2d 1073, 1076 (Ill. 1993).  The Court, however, can determine the duty to defend from the allegations in the Underlying Complaint:

> If the underlying complaints allege facts within or *potentially* within policy coverage, the insurer is obliged to defend its insured even if the allegations are groundless, false, or fraudulent. . . .  An insurer may not justifiably refuse to defend an action against its insured unless it is *clear* from the face of the underlying complaints that the allegations fail to state facts which bring the case within, or potentially within, the policy's coverage. . . .  Moreover, if the underlying complaints allege several theories of recovery against the insured, the duty to defend arises even if only one such theory is within the potential coverage of the policy. . . .  The underlying complaints and the insurance policies must be liberally construed in favor of the insured.

Travelers Ins. Companies v. Penda Corp., 974 F.2d 823, 827 (7th Cir. 1992) (quoting U.S. Fidelity & Guar. Co. v. Wilkin Insulation Co., 144 Ill.2d 64, 73-74, 578 N.E.2d 926, 930 (Ill. 1991)) (emphasis in the original).  The Court may also consider other evidence outside the complaint that sheds light on the coverage issue.  Travelers Ins. Companies, 974 F.2d at 828. The only time evidence outside the complaint cannot be considered is if the evidence tends to determine an issue crucial to the determination of the underlying lawsuit.  Id.

A.  COUNT I, THE 1994 POLICY

Iowa Mutual seeks summary judgment that it has no duty to defend the Underlying Action under the 1994 Policy.  Iowa Mutual is entitled to summary judgment against John and Joy Wells on this Count, but not against Brix.  The 1994 Policy was issued to Crop Care.  Hennings was an insured under the 1994 Policy because he was an officer and director of Crop Care.  The Underlying Action alleged that Hennings worsened John Wells' physical condition, and caused John Wells additional pain and suffering, by not providing the hog tissue samples to John Wells' physician and by causing the samples to be destroyed.  The worsening of John Wells' physical condition, and the pain and suffering caused by the delay, constituted bodily injury under the 1994 Policy.  Hennings' alleged actions with respect to the samples are potentially within the scope of his authority as an officer and director of Crop Care since the hogs were owned by Crop Care.  These events all occurred in 1996 and in 1997 when the 1994 Policy was in effect.  Thus, John and Joy Wells alleged a claim against an insured, Hennings, for bodily injuries arising from an occurrence that happened during the policy period.

The potential for coverage is not excluded by the "Intended or

Expected" exclusion.  The 1994 Policy excludes coverage for injuries that were intended or expected from the standpoint of the insured.  The claim in Count XV could potentially result in a finding that Hennings did not intend or expect John Wells to suffer bodily injuries from the delay in treatment due to the destruction of the hog tissue samples.  As quoted above, John Wells alleges that Hennings "knew or should have known" that the hog tissue samples could have been used for John Wells' medical treatment, but despite that, Hennings sought their destruction.  Amended Complaint ¶ 57.  These allegations must be read liberally in favor of John Wells.  Reading them in that manner, it is possible that a jury could find that Hennings should have known, but did not know, that destroying the samples would have delayed John Wells' medical treatment.  If Hennings did not know this, then John Wells' bodily injuries from the delay in treatment would not have been expected or intended by Hennings when Hennings caused the destruction of those samples.  These allegations, potentially, could result in damages that are not excluded by this exclusion.

The Court recognizes that paragraph 56 of the Underlying Amended Complaint alleges that Hennings was aware of the fact that the samples were needed for prompt medical treatment.  This is somewhat inconsistent

with paragraph 57.   The Court, however, must read the Underlying Amended Complaint liberally in favor of the Defendants.  When so read, a jury could still, potentially, find that Hennings did not know that the destruction of the samples would be detrimental to John Wells' medical treatment.  Hennings could have assumed, for example, that the type of salmonella at issue could have been determined just as easily from testing John Wells' blood as the hog tissues.  If so, Hennings did not intend or expect John Wells to be injured from the destruction of the hog tissue samples.

The 1994 Policy, however, also contains an Employer's Liability Exclusion for any claims for injuries to employees incurred during the course of their employ.  John and Joy Wells are precluded from denying that John Wells was an employee of Crop Care when he allegedly contracted salmonella from the hogs.  John and Joy Wells alleged that at all relevant times John Wells was an employee of Crop Care.  Underlying Complaint, ¶ 3.  This is a judicial admission that is binding on them.  Keller v. United States, 58 F.3d 1194, 1198 n. 8 (7th Cir. 1995).  John and Joy Wells, thus, admit that John Wells' bodily injuries arose from his exposure to the infected hogs during the course of his employment for Crop Care.  As a

result, all of his claims for bodily injury are excluded by the Employer's Liability Exclusion.

John and Joy Wells argue that they seek other kinds of damages that did not arise from bodily injury suffered as an employee. The only other damage they seek in Counts XV and XIX of the Underlying Action is the loss in the value of John Wells' workers compensation claim. A reduction in the value of a cause of action is not bodily injury under the 1994 Policy. Further, a reduction in the value of a cause of action is not property damage under the 1994 Policy. Property damages is limited to damage to tangible property. The damage to the cause of action is not damage to tangible property. Thus, the diminution in the value of his workers compensation claim is not covered by the 1994 Policy.

The only bodily injury damage claims against Hennings arise from the delay in John Wells' treatment. That injury is directly connected to the contraction of the disease and is an attempt to claim that Hennings is liable in a different capacity for injuries incurred during the course of Wells' employment with Crop Care. The Employer's Liability Exclusion excludes coverage for this bodily injury claim.

Brix, however, did not make a judicial admission that John Wells was

an employee of Crop Care, and so is not bound by the admission.  Brix, therefore, can present evidence that John Wells was not an employee.  Some evidence in the record indicates that he might have been an independent contractor rather than an employee.  The 1994 Policy's definition of "employee", quoted above, did not include independent contractors.  Hennings states that Crop Care treated him as an independent contractor.  With respect to the hog operation, John Wells was paid per hog and was not paid by the hour.  This evidence, therefore, creates a possibility that Wells was not an employee of an insured at the time he contracted the salmonella for purposes of the 1994 Policy.  If so, John Wells' bodily injuries claim was not excluded by the Employer's Liability Exclusion.

Iowa Mutual argues that Brix is also precluded by the judicial admission from challenging whether John Wells was an employee.  The Court disagrees.  Admissions bind the party making the admission.  <u>Keller</u>, 58 F.3d at 1198 n. 8.  The admission is not binding on any other party.  Brix is free to present evidence to dispute whether Wells was an employee of Crop Care at the time he allegedly contracted the disease.  Hennings' deposition creates an issue of fact, and so precludes summary judgment against Brix based on the Employer's Liability Exclusion.

Iowa Mutual also argues that the injury here did not result from an occurrence because the injuries alleged were intentional. Motion at 9. An occurrence is an accident. An accident is an unforeseen event of an untoward or disastrous character. Bituminous Cas. Corp. V. Gust K. Newberg Const. Co., 218 Ill.App.3d 956, 965-66 (1st Dist. 1991). As explained above, the injury to Wells from the destruction of the hog tissue samples may not have been intended or expected from the standpoint of the insured, Hennings. If so, the injury was unforeseen and, thus, accidental. If so, the injury resulted from an occurrence. Given this potential, there is a duty to defend.

Last, Iowa Mutual argues that the injury was not covered by the 1994 Policy because policy declarations in the 1994 Policy refer to Crop Care's business as being a "feed store" or "feed and seed sales". Motion at 9. Iowa Mutual argues that the injury to John Wells was not covered because the hog business was not part of the feed and seed business. Iowa Mutual essentially argues that a description of the insured's business in an insurance policy declaration constitutes an exclusion from coverage for injuries arising from any other activity.

Iowa Mutual cites no authority for this proposition, and the Court is

21

not persuaded.  The 1994 Policy promises to pay for injuries arising from an occurrence.  The 1994 Policy contains exclusions that set forth specific circumstances when injuries are not covered.  Those exclusions do not exclude injuries from businesses other than a feed store or feed and seed sales operations.[3]  Thus, under these provisions, the 1994 Policy covers bodily injuries arising from Crop Care's hog operation.  The reference in the declarations to a feed store or feed and seed sales, at best, creates an ambiguity.  All doubts or ambiguities are to be resolved in favor of the insured.  U.S. Fidelity & Guar. Co., 578 N.E.2d at 930.  When read in favor of the insured, the claimed ambiguity in the1994 Policy does not create an exclusion from coverage.[4]

Therefore, Iowa Mutual is entitled to summary judgment with respect to John and Joy Wells under the 1994 Policy.  Iowa Mutual is not entitled to summary judgment against Brix under the 1994 Policy.

---

[3]Iowa Mutual, for example, excluded from coverage for injuries from businesses other than farming in the Farm Policy through the Business Pursuits Exclusion.  Thus, Iowa Mutual knew how to include an express exclusion for business pursuits that were not intended to be covered by a policy.

[4]Iowa Mutual does not claim that Crop Care engaged in any fraud or made any misrepresentations regarding its business operations either on the application for the 1994 Policy or at some other point during the formation of the insurance contract.

B.      COUNT II, THE 2000 POLICY

Count II of Iowa Mutual's Complaint concerns the 2000 Policy.  The parties agree that Iowa Mutual is entitled to summary judgment on this Count because the 2000 Policy only covered injuries incurred between January 1, 2000, and January 1, 2001.  All the injuries alleged in the Underlying Action occurred prior to January 1, 2000.  Thus, all parties agree that there is no possibility of coverage, and so, no duty to defend under the 2000 Policy.

C.      FARM POLICY

Iowa Mutual is not entitled to summary judgment on the Farm Policy. The comparable coverage and exclusion paragraphs in the Farm Policy are the same in all material respects as the provisions of the 1994 Policy quoted above.  Thus, like the 1994 Policy, there is a possibility of coverage under these provisions of the Farm Policy.[5]

The only additional issue is whether the potential for coverage is excluded under the Business Pursuits Exclusion.  The Business Pursuits

---

[5]Further, the Employer's Liability Exclusion does not apply to the Farm Policy because John Wells was employed by Crop Care, and Crop Care is not an insured under this Policy.  The Farm Policy was issued to Hennings personally and the only additional insured were individuals in his household.

Exclusion excludes coverage for injuries resulting from the operation of any business enterprise other than farming.  Hennings is alleged to have injured Wells by causing the destruction of hog tissue samples from hogs that were part of Crop Care's hog operation.  Hennings participated in the hog operation as an officer and director of Crop Care.  The definition of "farming" in the Farm Policy includes agricultural activities.  The hog operation is clearly agricultural.

Iowa Mutual argues that the definition of "farming" only includes farming on premises owned by Hennings.  The Court disagrees.  The language on which Iowa Mutual relies, defines farming as agricultural operations and roadside stands that are operated on Hennings' premises. The premises limitation only applies to roadside stands.  Thus, the hog operation was within the Farm Policy's definition of "farming", and so, not excluded by the Business Pursuits Exclusion.  There is a potential for coverage under the Farm Policy, and Iowa Mutual has a duty to defend.

THEREFORE, Iowa Mutual's Motion for Summary Judgment Pursuant to Rule 56 of the Federal Rules of Civil Procedure and CDIL-LR 7.1(D) (d/e 48) is ALLOWED in part and DENIED in part.  Summary judgment is entered in favor of Iowa Mutual and: (1) against Defendants

John and Joy Wells on Counts I and II of the Complaint; and (2) against

Defendant Brix on Count II of the Complaint.  The Motion is otherwise

denied.

IT IS THEREFORE SO ORDERED.

ENTER:   October 12, 2006.

FOR THE COURT:

_____ s/  Jeanne E. Scott _____
JEANNE E. SCOTT
UNITED STATES DISTRICT JUDGE